20-3305-cr
*United States of America v. Joyner*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of January, two thousand twenty-two.

Present:
> DEBRA ANN LIVINGSTON,
> > *Chief Judge*,
> ROBERT D. SACK,
> > *Circuit Judge*,
> BRIAN M. COGAN,
> > *District Judge.*[*]

---

UNITED STATES OF AMERICA,

> *Appellee*,

v.                                                            20-3305-cr

DEWAYNE JOYNER,

> *Defendant-Appellant.*

---

| For Appellee: | JOSEPH VIZCARRONDO III, Assistant United States Attorney (Marc H. Silverman, Assistant United States Attorney (of counsel), *on the brief*), *for* Leonard C. Boyle, Acting United States Attorney for the District of Connecticut, New Haven, CT. |
|---|---|

---

[*] Judge Cogan, of the United States District Court for the Eastern District of New York, sitting by designation.

For Defendant-Appellant: WILLIAM THEODORE KOCH III (Koch, Garg & Brown, LLP), Niantic, CT.

Appeal from an order and judgment of the United States District Court for the District of Connecticut (Meyer, *J*.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED in part** and the case is **REMANDED** with the direction that the district court vacate Defendant-Appellant's sentence for the limited purpose of determining the applicable drug quantity and then resentencing Defendant-Appellant based upon the resulting base offense level and Guidelines range.

* * *

Dewayne Joyner ("Joyner") appeals from the April 22, 2019 order of the United States District Court for the District of Connecticut (Meyer, *J*.) denying his motion to suppress, and from the September 24, 2020 judgment of the district court sentencing him principally to 180 months in prison for possession with intent to distribute and distribution of heroin. *See* 21 U.S.C. § 841(a)(1), (b)(1)(B)(i), (b)(1)(C). On appeal, Joyner argues that the district court erroneously denied his pretrial motion to suppress. He also argues that, at sentencing, the district court committed reversible error by applying three two-level enhancements to his base offense level, *see* U.S.S.G. §§ 2D1.1(b)(1), 2D1.1(b)(2), 3B1.1(c); by refusing to downwardly adjust his offense level, *see* U.S.S.G. § 3E1.1(a); and by determining that his base offense level was 26 for possessing at least 160 grams but less than 280 grams of a mixture containing both heroin and fentanyl, *see* U.S.S.G. § 2D1.1(c)(7).

For the reasons stated herein, we affirm the district court's order denying the motion to suppress and we affirm in part the judgment of the district court sentencing Joyner to 180 months. As to his sentence, we reject Joyner's claims that (1) the district court erred in applying the three

two-level enhancements under Sections 2D1.1(b) and 3B1.1(c) of the United States Sentencing Guidelines, and (2) the district court erred in refusing to downwardly adjust his offense level under Section 3E1.1(a) of the Guidelines. We agree, however, that there was insufficient evidence on the record to find by a preponderance of the evidence that Joyner possessed the drug quantity necessary for a base offense level of 26. *See* U.S.S.G. § 2D1.1(c)(7). We thus remand with directions that the district court vacate Joyner's sentence for the limited purpose of determining the applicable drug quantity and resentencing him based on the resulting offense level, with any attendant effect on Joyner's Guidelines range. We assume the parties' familiarity with the underlying facts and the procedural history of the case.

**1. Motion to Suppress**

Joyner argues that the district court erroneously denied his motion to suppress because the warrant authorizing the search of his hotel room lacked probable cause and was unconstitutionally deficient on its face. *See* U.S. Const. amend. IV ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."). In considering whether a search warrant application is supported by probable cause, the "task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Reviewing courts pay "great deference" to a judge's "determination of probable cause." *Id.* at 236 (citation omitted). Their

3

role is "simply to ensure that the [judge] had a substantial basis for . . . conclud[ing] that probable cause existed." *Id.* at 238–39 (internal quotation marks and citation omitted).

Here, the issuing judge had more than a substantial basis for concluding that probable cause supported the search warrant application. Joyner suggests that the warrant was issued based solely on the uncorroborated word of a confidential informant. We disagree. While the warrant application makes clear that Joyner was primarily linked to the hotel room by "source information" indicating that "Joyner had been staying at the Holiday Inn and using the hotel to store narcotics," the warrant application also contains sufficient corroboration. Appellant's App'x 32. Joyner was initially identified as selling heroin in the area by a separate informant. The warrant application details how, utilizing an informant, surveillance officers confirmed through a controlled buy that Joyner was, in fact, selling heroin. In addition, as set out in the application, surveillance officers followed Joyner for several days. Officers observed Joyner entering and exiting a hotel in town instead of other locations that he frequented. The application further explains how, as authorized by a separate warrant, Joyner's person was searched outside of this hotel, where he was found in possession of heroin packaged for street-level sales, four cell phones, a quantity of cash consistent with the sale of narcotics, and a key card for his hotel room. In the affidavit, the investigating agents affirmed that in their experience, individuals involved in the drug trade "routinely utilize addresses and areas not associated with them in [an] effort to keep and maintain their narcotics trade." Appellant's App'x 32. Together, the facts and circumstances alleged in the warrant application established a fair probability that drugs or

evidence of drug sales would be found inside Joyner's hotel room, and thus perforce a substantial basis for this conclusion. *See Gates*, 462 U.S. at 238.

## 2. Sentencing Enhancements

We next turn to the three two-level enhancements that the district court applied to Joyner's offense level for his participation in an uncharged robbery related to his dealing of narcotics. In reviewing Joyner's preserved challenge to the applicability of these enhancements, this Court reviews the district court's "interpretation of the Guidelines *de novo*, and its findings of fact relevant to the Guidelines application for clear error." *United States v. Broxmeyer*, 699 F.3d 265, 281 (2d Cir. 2012). Relying principally on *United States v. Haymond*, 139 S. Ct. 2369 (2019), Joyner argues that the district court violated his due process rights by enhancing his offense level for this relevant conduct. We disagree.

A sentencing court is authorized to "find facts relevant to sentencing by a preponderance of the evidence." *United States v. Jones*, 531 F.3d 163, 176 (2d Cir. 2008) (citation omitted). It is well established that "even acquitted conduct may be treated as relevant for purposes of Guidelines calculations 'so long as that conduct has been proved by a preponderance of the evidence.'" *Id.* (quoting *United States v. Watts*, 519 U.S. 148, 157 (1997)); *see United States v. Willis*, 14 F.4th 170, 188 (2d Cir. 2021) (same); *see also United States v. Delva*, 858 F.3d 135, 160 (2d Cir. 2017) (recognizing that "the quantum of proof required for a verdict of guilt is higher than the quantum required for sentencing"). *Haymond* does not change these bedrock rules of Guidelines calculation.

In *Haymond*, the Supreme Court reaffirmed that "[a]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum . . . must be submitted to a jury, and proved beyond a reasonable doubt," *Haymond*, 139 S. Ct. at 2377 (plurality opinion) (quoting *Apprendi*

5

*v. New Jersey*, 530 U.S. 466, 490 (2000)), and that this principle applies "with equal force to facts increasing the mandatory minimum," *id.* at 2378 (quoting *Alleyne v. United States*, 570 U.S. 99, 112 (2013) (plurality opinion)). Here, however, the enhancements to Joyner's offense level in connection with his robbery of the drugs he later possessed and distributed did not increase his statutory minimum or maximum sentence. *Haymond* is thus inapposite. *See United States v. Booker*, 543 U.S. 220, 233 (2005) ("We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. . . . For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." (citing *Apprendi*, 530 U.S. at 481)). The district court did not err in applying these enhancements based on a preponderance of the evidence and did not violate Joyner's due process rights.

### 3. Acceptance of Responsibility

We next address Joyner's challenge to the district court's refusal to downwardly adjust his offense level under Section 3E1.1(a) of the Guidelines.[1] We generally review such a claim for abuse of discretion. *See United States v. Ortiz*, 218 F.3d 107, 109 (2d Cir. 2000) (per curiam) (determining that the sentencing court "acted within its discretion" in concluding that the defendant "had not accepted responsibility for his offense"); *see also* U.S.S.G. § 3E1.1, Note 5 ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review."). As relevant here, in determining whether this adjustment applies, the sentencing court

---

[1] Section 3E1.1(a) of the Sentencing Guidelines permits a sentencing court to decrease a defendant's offense level by two levels where the defendant "clearly demonstrates acceptance of responsibility for his offense."

may consider, among other things, the "timeliness of the defendant's conduct in manifesting the acceptance of responsibility." U.S.S.G. § 3E1.1, Note 1(H). The adjustment is "not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1, Note 2. However, a conviction by trial "does not automatically preclude a defendant from consideration for such a reduction," as in "rare situations," a defendant "may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial." *Id.* "This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." *Id.* Still, where a defendant takes his case to trial, the "determination that [the] defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." *Id.*

Here, the district court did not abuse its discretion, or otherwise err, in rejecting Joyner's request to downwardly adjust his offense level under Section 3E1.1(a). Joyner put the Government to its burden of proof at trial by challenging each of the five charges against him. While he now asserts that he only went to trial to preserve various constitutional challenges, Joyner in fact rejected a conditional plea agreement that would have preserved his constitutional challenges for appeal without the necessity of going to trial. GA 248. Acting within its discretion, the court appropriately determined that, "[b]ased upon everything [it saw]," Joyner was "anxious" to put the Government to its burden of proof, and was not an ideal candidate for Section 3E1.1(a)'s adjustment because he had not shown that he "turned [his] life around" or that he "made choices to fully be remorseful and to accept what it is [he had] done wrong." GA 259; *see United States v. Jeffers*, 329 F.3d 94, 102 (2d Cir. 2003) ("A sentencing court's decision to grant or deny

7

a § 3E1.1 reduction depends, in large part, on that Court's determination of the credibility of the defendant, and this determination should not be disturbed unless it is without foundation." (internal quotation marks, citations, modifications, and ellipsis omitted)); *United States v. Reyes*, 9 F.3d 275, 280 (2d Cir. 1993) ("In determining whether the defendant has accepted responsibility for the full scope of the offense, the district court has discretion to weigh a defendant's candor and remorse."). We discern no abuse of discretion in this determination.

**4. Base Offense Level Calculation**

We last turn to the district court's calculation of Joyner's base offense level. We review Joyner's unpreserved procedural challenge for plain error. *See United States v. Verkhoglyad*, 516 F.3d 122, 128 (2d Cir. 2008) ("Because [the defendant] did not raise these procedural objections to the district court at the time of sentencing, we review his claims for plain error."). Under plain error review, "'an appellate court may, in its discretion' grant relief if the defendant demonstrates (1) error, (2) that is plain, (3) that affected the defendant's substantial rights . . . , and (4) that 'seriously affect[ed] the fairness, integrity[,] or public reputation of judicial proceedings.'" *United States v. Scott*, 979 F.3d 986, 991 (2d Cir. 2020) (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)). Joyner argues that the district court committed plain error by concluding that his base offense level was 26 based on its finding that a preponderance of the evidence showed he possessed 258 grams of a heroin-fentanyl mixture. We agree.

The Government concedes that there is insufficient evidence in the record to support the district court's drug quantity calculation. Joyner was convicted of possessing at least 267 grams of heroin, of which about 60 grams was determined to be a heroin-fentanyl mixture—insufficient for a base offense level of 26. PSR ¶ 23; Appellant's App'x 35–37. The district court arrived at this offense level based only on its determination that, in total, at least 258 grams of the heroin

Joyner concededly possessed contained a detectable amount of fentanyl mixed in.[2]   We agree with Joyner and the Government, however, that this factual conclusion is not supported by the record.   Laboratory testing confirmed that three of four separate packages of heroin possessed by Joyner also contained fentanyl.   The record reflects that the four packages together had a combined weight of 190.2 grams.   Importantly, however, the record does *not* reveal the total weight of the three packages that tested positive, rendering it impossible to conclude by a preponderance of the evidence that Joyner possessed at least 160 grams but less than 280 grams of a heroin-fentanyl mixture.   *See* U.S.S.G. § 2D1.1(c)(7).

The Government argues that Joyner's sentence may nonetheless be upheld because Joyner cannot satisfy the third and fourth prongs of plain error review as the record clearly shows that the district court would have imposed the same 180-month sentence regardless of the applicability of base offense level 26.   We disagree.   Under the third prong of the plain error test, for an error to "affect substantial rights," there "must be a reasonable probability that, but for the error, the outcome of the proceeding would be different."   *United States v. Bennett*, 839 F.3d 153, 159 (2d Cir. 2016), *as amended* (Oct. 7, 2016) (internal quotation marks and citation omitted).   Even where there are "significant procedural errors," this Court "will not vacate a sentence and remand if the record indicates clearly that the district court would have imposed the same sentence in any event."   *United States v. Rasheed*, 981 F.3d 187, 197 (2d Cir. 2020) (internal quotation marks

---

[2]  Pursuant to the Guidelines, a defendant's base offense level is 26 if he possesses at least 400 but less than 700 grams of heroin or at least 160 but less than 280 grams of fentanyl.   U.S.S.G. § 2D1.1(c)(7).   The Government must establish drug quantity by a "simple preponderance of the evidence."   *United States v. Kirk Tang Yuk*, 885 F.3d 57, 76 (2d Cir. 2018).   Although, as set forth herein, the district court lacked sufficient evidence as to the *quantity* of heroin-fentanyl mixture that Joyner possessed, Joyner does not challenge and we discern no error in the district court's decision to use the fentanyl range in determining the base offense level associated with such a mixture.   *See* U.S.S.G. § 2D1.1, Note to Drug Quantity Table A.

and citation omitted). However, "[i]n most cases[,] a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome." *Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016).

The record here does not clearly indicate that the district court would have imposed the same sentence absent the calculation of the weight of the heroin-fentanyl mixture. The district court repeatedly stated that it would impose the same sentence if the *enhancements stemming from the robbery* were ultimately held to be inapplicable. *See* GA 282–84. But the court never clearly indicated that it would have imposed the same sentence regardless of whether Joyner had a base offense level of 24 as opposed to 26. Without such clarity, we cannot conclude that the error did not affect Joyner's substantial rights, nor that it did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

The district court's references to fentanyl demonstrate at least a reasonable probability that Joyner's sentence may have been different absent the error. For example, the district court reasoned that it "can't ignore the fact that fentanyl is purposefully put in heroin substances to make it more strong as kind of a selling part of the addictiveness of heroin," emphasized the higher "lethality" arising from the fact that overdoses "correspond quite strongly, unfortunately, with the presence of fentanyl," and concluded that "there is a reason why a higher penalty would apply for somebody who is experienced in the ways of drug dealing and decides to deal with a substance that's laced at least in part with fentanyl." GA 223.

Accordingly, we remand with the direction that the district court vacate Joyner's sentence for the limited purpose of determining the applicable drug quantity and resentencing him based on the appropriate calculation of his base offense level and corresponding Guidelines range.[3]

\* \* \*

We have considered Defendant-Appellant Joyner's remaining arguments and find them to be without merit.   We **AFFIRM in part** the judgment of the district court and **REMAND** the case for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[3] Given the absence of an objection below, which would have alerted the district court and the Government to the need for additional evidence regarding drug quantity, the Government should be permitted to introduce new evidence related to the quantity of the heroin-fentanyl mixture if it wishes to do so.  *See United States v. Archer*, 671 F.3d 149, 168 (2d Cir. 2011) (noting that additional evidence may be admitted on remand from a sentencing error where "special circumstances" exist suggesting that the prohibition on such evidence would be inappropriate).