21-2923-cr
*U.S. v. Strange*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

AUGUST TERM 2022
No. 21-2923

**UNITED STATES OF AMERICA,**
*Appellee,*

v.

**STEVEN KENT STRANGE,**
*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of Connecticut

SUBMITTED: MARCH 6, 2023
DECIDED: APRIL 17, 2023

Before:     POOLER, WESLEY, and MENASHI, *Circuit Judges.*

Defendant-Appellant Steven Kent Strange appeals the judgment of the United States District Court for the District of Connecticut (Shea, J.) sentencing him to 57 months' imprisonment following his plea of guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. Strange argues that the district court incorrectly applied a two-level obstruction enhancement and improperly denied him a three-level sentence reduction. We disagree and affirm the judgment of the district court.

James Matthew Branden, Law Office of James M. Branden, Staten Island, NY.

Christopher Schmeisser, Robert S. Ruff, Assistant United States Attorneys, *for* Vanessa Roberts Avery, United States Attorney for the District of Connecticut, New Haven, CT.

_____

MENASHI, *Circuit Judge:*

Defendant-Appellant Steven Kent Strange appeals the judgment of the United States District Court for the District of Connecticut (Shea, J.) sentencing him to 57 months' imprisonment following his plea of guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. Strange argues that the district court incorrectly applied a two-level obstruction enhancement and improperly denied him a three-level sentence reduction. We disagree and affirm the judgment of the district court.

## BACKGROUND

Strange was employed at Collins Aerospace in Wilson, North Carolina, as a senior supervisor in the Fire Extinguisher Division from 2014 to 2019. Collins Aerospace is a business unit of United Technologies Corporation ("UTC"), a company headquartered in Farmington, Connecticut.

While Strange was employed there, UTC encouraged its employees to make charitable donations through its matching program and would match up to $25,000 in donations per employee annually. From 2015 to 2019, Strange carried out a scheme to defraud UTC in which he fabricated invoices that he submitted to the matching program. Strange submitted fake documentation

2

purporting to show that he, as well as some of his coworkers, had made significant charitable donations to an entity that Strange himself controlled. His coworkers had no knowledge of the submissions. In total, Strange received approximately $600,000 from the matching program and used those funds for personal expenses.

Strange was arrested in September 2019. His guilty plea was accepted in September 2020, and the presentence investigation concluded in October 2020. Shortly thereafter, the parties filed sentencing memoranda. The government's memorandum proposed a within-Guidelines sentence of 33 to 41 months' incarceration. Strange proposed a sentence significantly below the Guidelines range.

The sentencing was continued for months due to scheduling difficulties related to the Covid-19 pandemic. After the sentencing was scheduled for August 2021, the Probation Office updated the presentence report in early August. Just a few days prior to the sentencing, Strange filed a supplemental sentencing memorandum and related documents. Strange submitted three letters, each encouraging the imposition of a probationary sentence rather than imprisonment. The "Kornegy Letter," purportedly authored by Strange's employer William Kornegy, claimed that Kornegy's company could not survive without Strange's skills and that many would lose their jobs as a result of Strange's absence. The "Bala Letter," purportedly written by Strange's physician Dr. Robert Bala, recounted Strange's medical ailments and explained that his condition would deteriorate without constant care. The "Ellington Letter," purportedly from Strange's friend Thomas Ellington, detailed the ways in which Strange had aided Ellington and his wife in a time of need to show that Strange merited clemency.

By October 2021, the government had investigated the letters and established that all three were fraudulent. Strange had drafted the letters without the knowledge or approval of the purported

3

authors. In light of this discovery, the government indicated in a joint status report that it would seek a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 and oppose a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.

Strange's sentencing took place on November 19, 2021. As recommended by the Probation Office, the district court applied the obstruction of justice enhancement and denied the acceptance of responsibility reduction, ultimately imposing a sentence of 57 months. Strange challenges both decisions on appeal.

## STANDARD OF REVIEW

In reviewing the application of an obstruction enhancement, we apply a "mixed standard of review." *United States v. Khedr*, 343 F.3d 96, 102 (2d Cir. 2003). Findings of fact are reviewed for clear error, and legal conclusions such as "[a] ruling that the established facts constituted obstruction or attempted obstruction under the Guidelines" are reviewed de novo. *Id.*

We review the decision of the district court to deny the acceptance of responsibility reduction for abuse of discretion. *See, e.g.*, *United States v. Chu*, 714 F.3d 742, 746 (2d Cir. 2013). "Because the sentencing court is in a unique position to evaluate a defendant's acceptance of responsibility, its determination 'is entitled to great deference on review,'" *United States v. Defeo*, 36 F.3d 272, 277 (2d Cir. 1994) (quoting U.S.S.G. § 3E1.1 application note 5), and it will "not be disturbed unless it is without foundation," *id.* (quoting *United States v. Moskowitz*, 883 F.2d 1142, 1155 (2d Cir. 1989)).

## DISCUSSION

We have previously affirmed the application of the obstruction enhancement under U.S.S.G. § 3C1.1 when the defendant provided false information that would have been capable of influencing the

court had it not been discovered to be false. *See United States v. Stephens*, 369 F.3d 25, 27 (2d Cir. 2004) (noting that the defendant's "false testimony [in a *Fatico* hearing], if it had been credited, would clearly tend to influence the District Court's determination"). Courts have applied the same principle to false letters submitted to a sentencing court. *See, e.g.*, *United States v. Rickert*, 685 F.3d 760, 767-68 (8th Cir. 2012). We agree with those courts and hold that the submission of false information to a sentencing court, if it would have been capable of influencing the sentence, is a valid basis for applying U.S.S.G. § 3C1.1's obstruction enhancement. We affirm the judgment of the district court with regard to the application of the obstruction enhancement and the denial of the responsibility reduction.

## I

Strange offers two arguments for why the enhancement should not apply. Strange's first argument is that the forged letters "did not relate to his offense of conviction, to any relevant conduct, or to a closely related offense, such as, say, a co-defendant's case," as he argues U.S.S.G. § 3C1.1 requires. Appellant's Br. 11. Under U.S.S.G. § 3C1.1, the application of the two-level obstruction enhancement is appropriate if:

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense.

U.S.S.G. § 3C1.1. Clause 1 establishes a "temporal" restriction that "requires the obstruction to occur during the investigation, prosecution, or sentencing of the offense of conviction." *United States*

5

*v. Byors*, 586 F.3d 222, 227 (2d Cir. 2009). Clause 2 provides the "nexus element," which "requires that the obstructive conduct *relate* to the offense of conviction." *Id.* (emphasis added). Strange contends that the forged letters fail to satisfy this second requirement.

We agree with the sentencing court that "[t]he preparation of these letters certainly didn't relate to some other offense." App'x 178. Despite not being part of the conduct constituting the offense, the letters were submitted "to influence the outcome of the adjudication of conviction." *Id.* The sentencing court correctly decided that the phrase "related to" encompasses the "submission of fabricated letters to the [c]ourt for the sentencing of the offense of conviction" and that the term does not require a relation only to the underlying unlawful conduct. *Id.*

In reaching that conclusion, the district court relied on our summary order in *United States v. Butters*, 513 F. App'x 103 (2d Cir. 2013). That case involved a defendant's misrepresentation that he was an American citizen during interviews with Pretrial Services and with the Probation Office in connection with a presentence investigation related to the unlawful possession of a firearm. The district court correctly concluded that "*Butters* reflects an understanding that the obstructive conduct need not relate substantively to the offense of conviction in the sense that it has to somehow stem from or carry out or help conceal the offense of conviction. The false statements need not be about the offense of conviction." App'x 179.[1]

---

[1] "Although we decided [*Butters*] by nonprecedential summary order, rather than by opinion, our '[d]enying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases.'" *United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010) (quoting Order dated June 26, 2007, adopting 2d Cir. Local R. 32.1). The district court relied on *Butters* for the proposition we now adopt by opinion.

If it were otherwise, then the two clauses of U.S.S.G. § 3C1.1 would be contradictory. Clause 1 expressly authorizes the enhancement when the defendant obstructed justice with respect to the "sentencing" of the underlying offense. If Clause 2 required the obstructive conduct to relate only to the underlying offense conduct as distinct from the sentencing, then obstruction at the sentencing phase would never qualify. Because "the preferred meaning of a statutory provision is one that is consonant with the rest of the statute," *In re WorldCom, Inc.*, 723 F.3d 346, 355 (2d Cir. 2013) (quoting *Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir. 2002)), we reject Strange's interpretation of the second clause.

Strange's second argument is that the letters were not "material." Strange argues that "the main thrust of the defense sentencing submission" did not depend on the content of the letters but rather on "Mr. Strange's care-taking role and 'unique' family ties and responsibilities" as well as on the "co-morbidities that would make imprisonment during Covid-19 especially harsh." Appellant's Br. 12. According to Strange, the Kornegy and Ellington Letters "added nothing to these principal themes" and the Bala Letter was "largely duplicative of the medical history portion of the presentence report." *Id.*

The commentary to U.S.S.G. § 3C1.1 explains that the obstruction enhancement applies if the false information is "material[]." U.S.S.G. § 3C1.1 application note 4(F). Application note 6 defines "material" evidence as "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 application note 6. During the sentencing hearing, the district court stated that it was "able to say with great confidence that had [it] found the letters to be legitimate, they would have made a difference in the sentence." App'x 181. With regard to the Kornegy Letter, the district court noted

7

that "it's common for judges to consider the impact of incarceration on third parties, not just families, but employees for when … judges sentence white collar defendants." *Id.* at 183. Regarding the Bala Letter, the district court suggested that if separating Strange from his medical team would have resulted in "irreversible damage to [Strange's] body," it would have increased the risks associated with incarcerating Strange. *Id.* at 182. The district court acknowledged that the Ellington Letter "probably wouldn't have made a difference in the sentence," though the other two would have. *Id.* at 184. Given these explanations from the district court, we conclude that at least two of the forged letters satisfy § 3C1.1's materiality requirement, which makes application of the obstruction enhancement proper.

## II

Strange next argues that the district court erroneously denied him the acceptance of responsibility reduction. After applying the obstruction enhancement, the district court decided to deny the acceptance of responsibility reduction because of the dishonesty exhibited in Strange's fraudulent submissions and the degree to which the fraudulent submissions mimicked the behavior for which he had been convicted. The district court did not abuse its discretion in doing so.

Strange suggests that the district court abused its discretion in two ways. First, he claims that because the district court erroneously applied the obstruction of justice enhancement and because that erroneous application justified the denial of the acceptance of responsibility reduction, the denial of the reduction was erroneous too. Because we have already concluded that the application of the obstruction enhancement was appropriate, we reject Strange's first argument. Second, Strange claims that his situation is an "extraordinary" case that warrants an exception to the general rule that the obstruction enhancement will be accompanied by the denial

of the acceptance of responsibility reduction. We are again unpersuaded.

Assuming an offense level of 16 or greater, a three-level reduction in the offense level is appropriate "if the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a-b). However, the decision to grant the reduction is discretionary. "Under the guidelines, a sentencing court *may* reduce a defendant's offense level by up to three points if he 'clearly demonstrates acceptance of responsibility for his offense.'" *United States v. Ortiz*, 218 F.3d 107, 108 (2d Cir. 2000) (emphasis added). We have emphasized that "[a] defendant who enters a guilty plea is not automatically entitled to an adjustment for acceptance of responsibility." *Id.*; *see* U.S.S.G. § 3E1.1 application note 3 (noting that "evidence of acceptance of responsibility … may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility").

"Whether or not a defendant has accepted responsibility for a crime is a factual question." *United States v. Irabor*, 894 F.2d 554, 557 (2d Cir. 1990) (alteration omitted) (quoting *United States v. Thomas*, 870 F.2d 174, 176 (5th Cir. 1989)). A district court generally weighs relevant facts when determining whether the reduction is appropriate. "Although a guilty plea, combined with truthful statements about the defendant's offense and other relevant conduct, is 'significant evidence' of acceptance of responsibility, it can be outweighed by conduct that is inconsistent with acceptance of responsibility." *Ortiz*, 218 F.3d at 108. Application note 4 to § 3E1.1 explains that "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has *not* accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1 application note 4 (emphasis added). The note adds that "[t]here may, however, be extraordinary

cases in which adjustments under both § 3C1.1 and § 3E1.1 may apply." *Id.*

Strange contends that his situation is such an "extraordinary" case because he pleaded guilty and expressed responsibility for his actions, despite his later submission of the false letters. But this argument rests on the assumption that a guilty plea and public admission alone are sufficient to warrant the three-level reduction. That is incorrect. *See Ortiz*, 218 F.3d at 108. In any event, we agree with the district court that it is hard to "believe a defendant accepts responsibility when he fabricates evidence that's aimed at escaping just punishment for his crime." App'x 184.

In deciding whether to apply the sentence reduction, a district court considers factors such as the defendant's "voluntary termination or withdrawal from criminal conduct or associations." U.S.S.G. § 3E1.1 application note 1(b). Here, the district court observed that Strange's forgery of the sentencing letters resembled the forgeries he submitted as part of the donation scheme, indicating that Strange had not abandoned his criminal conduct. These were appropriate considerations. We conclude that the district court did not abuse its discretion in denying the acceptance of responsibility reduction.

## CONCLUSION

The district court correctly applied U.S.S.G. § 3C1.1's obstruction enhancement to Strange's sentence and did not abuse its discretion in denying Strange U.S.S.G. § 3E1.1's acceptance of responsibility reduction. We affirm the judgment of the district court.